IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE: )
)
CHURCH STREET HEALTH ) NO. 3:12-cv-00677
MANAGEMENT, LLC, *et al.*, ) Chief Judge Haynes
)
Debtors. )
)

## MEMORANDUM

This action was initiated by motion of National Union Fire Insurance Company of Pittsburgh, Pennsylvannia ("National Union") to withdraw the reference to the Bankruptcy Court and to modify the automatic stay. This motion is related to a prior action in this Court, <u>National Union Fire Insurance Company of Pittsburgh, Pa. v. Small Smiles Holding Company, LLC</u>, No. 3:10-cv-00743 ("Rescission Action"), that was dismissed without prejudice to reopen.

Before the Court is National Union's amended motion to withdraw the reference to Bankruptcy Court and to modify the automatic stay. (Docket Entry No. 2, Amended Motion to Withdraw). In essence, National Union moves to continue its prosecution of the Rescission Action for which the lifting of the automatic stay is necessary. The Debtors oppose this motion on the grounds that National Union has not shown cause to withdraw the reference to Bankruptcy Court. (Docket Entry No. 4, Debtor's Memorandum).

### A. PROCEDURAL HISTORY

The parties before the Court are National Union and the Debtors: Small Smiles Holding Company, LLC, n/k/a SSH DIP, LLC ("SSHC"), a Delaware corporation, and its affiliates. The Debtors provided management services to dental clinics across the country. Prior to this motion and

1

the underlying actions, National Union issued liability policies to SSHC and its affiliates. SSHC was the first named insured on these policies and certain of SSHC's affiliates and dental center employees qualified as named insureds. Under the policies, any insured named as a defendant may tender a civil action to National Union for defense and indemnity. (Docket Entry No. 2, Amended Motion to Withdraw at 3).

In 2007, federal and state governmental agencies began investigating the Debtors. Subsequently, individual plaintiffs filed legal actions against the Debtors with damages claims based upon treatment received at the Debtors' dental clinics.[1] The Debtors tendered these actions to National Union for defense and indemnity under the terms of the liability policies.

On August 5, 2010, National Union filed the Rescission Action in this District against the Debtors. (No. 3:10-cv-00743). In the Rescission Action, National Union sought a declaratory judgment that the policies between National Union and the Debtors were void or voidable *ab initio* and should be rescinded. National Union alleged that SSHC failed to disclose material information to National Union prior to the issuance of the policies. (No. 3:10-cv-00743, Docket Entry No. 1, Complaint). SSHC filed two counterclaims against National Union for National Union's violation of the Tennessee Consumer Protection Act and bad faith refusal to honor the insurance policies. On October 4, 2011, the Rescission Action was administratively closed pursuant to a joint motion by all parties subject to either party's right to petition the Court to reopen the case. Id. (Docket Entry

---

[1] There are: four actions in New York State Supreme Court, In re Small Smiles Litigation, No. 11-2128; one action in Ohio, Higgs et al. v. FORBA Holdings, LLC et al., No. CI0201101859, and; two actions in Oklahoma, Hernandez v. FORBA Holdings, LLC et al., No. CJ-2010-921 and Henry A. Meyer, III, as Gaurdian Ad Litem of Ivan Romero et al. v. FORBA Holdings, LLC et al., No. CJ-2011-921. (Docket Entry No. 2, Amended Motion to Withdraw at 3-4).

2

No. 197).

On February 20, 2012, the Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code. Pursuant to a Standing Order of this Court, the bankruptcy proceeding was referred to the Bankruptcy Judge for the Middle District of Tennessee. The Debtors'

> primary purpose . . . was to facilitate the sale of substantially all of their assets under Section 363 of the Bankruptcy Code . . . [and] [c]urrently, the Debtors are in the process of formulating a plan of liquidation, which the Debtors expect to file with the Bankruptcy Court within the next several weeks. The Debtors anticipate that under a confirmed plan, all of their remaining assets, i.e. the National Union Policies and the litigation claims, either will be transferred to the Committee, or will vest in a liquidating trust. Thus, upon effective date of a plan of liquidation, the Debtors, for all practical purposes, will cease to exist, and the real party in interest in the [Rescission Action] will be the Committee or its successor and/or a liquidating trustee.

(Docket Entry No. 4, Debtor's Memorandum at 8-9). The bankruptcy proceeding imposed an automatic stay on all pending litigation pursuant to 11 U.S.C. § 362.

Between February and May 2012, the plaintiffs in the state court litigation filed motions to lift the automatic stay to continue prosecuting their actions against the Debtors. The Bankruptcy Court entered an agreed order of the parties to lift the automatic stay for the state court litigation. (Docket Entry No. 4, Debtor's Memorandum at 7-8). National Union alleges that the Debtors will again tender National Union for defense and indemnity in those actions because of the stay relief. National Union seeks to reopen the Rescission Action and continue litigating the validity of the policies.

### B. CONCLUSIONS OF LAW

Section 157(d) of the Bankruptcy Code provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely

motion of any party, **for cause shown.**"[2] 28 U.S.C. § 157(d) (emphasis added). "[T]he 'cause' requirement for permissive withdrawal reflects congressional intent to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." Holland v. LTV Steel Co., Inc., 288 B.R. 770, 774 (N.D. Ohio 2002).

Permissive withdrawal of an automatic reference is limited. Congress did not intend § 157(d) to be "an escape hatch through which most bankruptcy matters will be removed to District Court from bankruptcy court." Official Comm. of Unsecured Creditors of Appalachian Fuels, LLC v. Energy Coal Res., Inc. (In re Appalachian Fuels, LLC), 472 B.R. 731, 737 (E.D. Ky. 2012). "[O]nly compelling cause warrants withdrawal from the automatic reference to bankruptcy under the non-mandatory provision." Wash. Mfg. Co. v. Citicorp N. Am., Inc. (In re Wash. Mfg. Co.), 133 B.R. 113, 116 (M.D. Tenn. 1991). In this action, National Union "must meet a high bar in order to justify permissively removing a matter from the capable hands of the Bankruptcy Court." Nukote Int'l, Inc. v. Office Depot, Inc., No. 3:09-0921, 2009 U.S. Dist. Lexis 106702, at *8 (M.D. Tenn. Nov. 16, 2009).

The Bankruptcy Code does not expressly define "cause" sufficient for withdrawal of an automatic reference. Courts developed a non-exhaustive list of factors to consider whether to withdraw a reference.

(1) whether the proceeding is "core" or "non-core;"

(2) the efficient use of judicial resources;

---

[2] The Court will only address the issue of permissive withdrawal. Section 157(d) also provides for mandatory withdrawal "if the court determines that resolution of the proceedings requires consideration of both title 11 and other laws of the United States." 28 U.S.C. § 157(d). Mandatory withdrawal is not an issue in this action.

4

(3) the delay and costs to the parties;

(4) promoting uniformity of bankruptcy administration;

(5) the prevention of forum shopping; and

(6) other related factors, such as expediency of the bankruptcy process and whether there has been a jury trial demanded.

Nukote, 2009 U.S. Dist. Lexis 106702, at *8; see also Orion Pictures Corp. V. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993). If "one or more of these factors is present, the court may find that cause exists to withdraw the matter." United States v. Kaplan, 146 B.R. 500, 504 (D.Mass. 1992).

### 1. Core vs. Non-Core Proceeding

National Union argues that its motion to modify the automatic stay to reopen the Rescission Action is a non-core proceeding. "[I]n considering . . . a withdrawal motion, 'whether a proceeding is core or non-core . . . is a central question.'" In re Appalachian Fuels, LLC, 472 B.R. at 737. Core proceedings arise in the context of bankruptcy and address issues governed by bankruptcy law. Nukote, 2009 U.S. Dist. Lexis 106702 at *10. In contrast, "if the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of the bankruptcy" then a non-core proceeding is present. Mich. Employ. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1144 (6th Cir. 1991). "Congress intended to interpret 'core proceedings' broadly; thus, proceedings which do not contain all the characteristics of a non-core proceeding will be determined to be core." Hughes-Bechtol, Inc. v. Ohio (In re Hughes-Bechtol), 141 B.R. 946, 949 (Bankr. S.D. Ohio 1992).

Section 157(b)(2) defines core proceedings, to "include, but are not limited to . . . motions

5

to terminate, annul, or modify the automatic stay." 28 U.S.C. § 157(b)(2)(G). A motion to modify the automatic stay, then, is expressly included in the statute as a "core proceeding." Id. § 157(b)(2)(G). The legislative history of § 157 explains that proceedings to modify an automatic stay are core bankruptcy proceedings because:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy law. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence for the debtor's assets prevents that.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 340, *reprinted in* 1978 U.S. Code Cong. & Admin. News. 5963, 6296.

Other characteristics of a non-core proceeding are: "(1) it is not specifically identified as a core proceeding under 28 U.S.C. § 157(b)(2)(B)-(N); (2) it existed prior to the filing of the bankruptcy case; (3) it would continue to exist independent of the provisions of Title 11; and (4) the parties' rights, obligations, or both are not significantly affected as a result of the filing of the bankruptcy case." Infotopoa, Inc. v. Twin City Fire Ins. Co. (In re Infotopia, Inc.), No. 4:07-cv-02936, 2007 WL 2859774, at *2 (N.D. Ohio Sept. 26, 2007) (citing In re Hughes-Bechtol, 141 B.R. at 948-49).

National Union's motion to "modify the automatic stay," is expressly listed in § 157 as a core proceeding. Moreover, the automatic stay did not exist prior to the filing of the Debtor's bankruptcy

6

proceeding. Yet, National Union argues that its motion should be withdrawn because the "decision whether or not to rescind the Policies is non-core because it does not address a right created by the Bankruptcy Code." This argument lacks merit. National Union's motion to withdraw the reference focuses on the automatic stay. The Bankruptcy Judge is well suited to determine whether to lift the automatic stay, as it is an issue of significant relevance to the Debtor's bankruptcy petition. The Bankruptcy Judge will not rule on whether to rescind the policies because the Rescission Action is before the District Court.

The Court concludes that National Union's motion to modify the automatic stay does not meet the characteristics of a "non-core proceeding," but involves a core proceeding.

### B. Efficient Use of Judicial Resources

The conclusion that this action involves a core proceeding influences the consideration of the remaining factors. Nukote, 2009 U.S. Dist. Lexis 106702 at *17. For example, if the proceeding is "non-core" then "courts have often concluded that judicial economy is better served by withdrawing the reference and allowing a court of general jurisdiction to resolve the matter." Id. Yet, here, the Bankruptcy Court has already determined whether to lift the automatic stay of the state court litigation. The Bankruptcy Court is in a better position to assess the issues in the bankruptcy petition and the effect of lifting the automatic stay. At this stage in the litigation, the Court deems denial of this motion to be an efficient use of judicial resources. Significantly, "the Debtors are in the process of formulating a plan of liquidation, which the Debtors expect to file with the Bankruptcy court within the next several weeks . . . [that will result in changing] the real party in interest in the [Rescission Action]." (Docket Entry No. 4, Debtor's Memorandum at 14).

National Union relies upon Trailer Source, Inc. v. Hyundai Translead, Inc., No. 3:10-cv-

7

00148, 2010 U.S. Dist. Lexis 30234 (M.D. Tenn. Mar. 29, 2010), for its motion to withdraw the reference. National Union argues that a District Judge has managed the Rescission Action and is "intimate[ly] familiar[] with the circumstances of the [Rescission Action] . . . [and] judicial economy dictates that this court should decide the motion" to modify the automatic stay. (Docket Entry No. 2, Amended Motion to Withdraw at ¶ 23) (quoting Trailer Source, 2010 U.S. Dist. Lexis 30224, at *2) (holding to withdraw the reference to bankruptcy court of the motion to modify the automatic stay due to the eight year long litigation history of the case in district court). The Court concludes that Trailer Source is not controlling. This member of the Court is unfamiliar with the Rescission Action. National Union can litigate the Rescission Action after the Bankruptcy Court determines whether to lift the automatic stay. The Bankruptcy Court is more "intimately familiar" with the law and facts to decide the automatic stay issue. Judicial economy supports the Bankruptcy Court's determination of National Union's motion.

### C. CONCLUSION

Here, the Court concludes that insufficient cause exists to withdraw the reference from the Bankruptcy Judge because a modification of an automatic stay is a core proceeding of bankruptcy courts. In addition, a review of the remaining factors are against withdrawing the reference. The Bankruptcy Judges of this District possess the knowledge, expertise, and procedures to provide any necessary relief. Thus, the Court concludes that insufficient cause exists to withdraw the reference to Bankruptcy Court.

For these reasons, National Union's motion to withdraw reference to the Bankruptcy Court for the Middle District of Tennessee should be denied.

An appropriate Order is filed herewith.

8

**ENTERED** this _10_ day of September, 2012.

                                              WILLIAM J. HAYNES, JR.
                                              Chief Judge
                                              United States District Court

9

Case 3:12-cv-00677   Document 23   Filed 09/10/12   Page 9 of 10 PageID #: 300

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE: )
)
CHURCH STREET HEALTH ) NO. 3:12-cv-00677
MANAGEMENT, LLC, *et al.*, ) Chief Judge Haynes
)
Debtors. )
)

## ORDER

In accordance with the Memorandum filed herewith, National Union Fire Insurance Company of Pittsburgh, Pennsylvania's Amended Motion to Withdraw Reference to Bankruptcy Court and to Modify the Automatic Stay to Continue to Prosecute an Action Seeking to Rescind Certain Insurance Policies (Docket Entry No. 2) is **DENIED**.

This action shall be transferred to the Bankruptcy Court of this District.

It is so **ORDERED**.

ENTERED this ____ day of September, 2012.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court